**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

FILED

SYLVAN LEARNING, INC. )
1001 Fleet Street )
Baltimore, MD 21202 )
)
          Plaintiff )
        v. )
)
SYLVANFRANCHISEISSUES.COM, )
an Internet Domain Name )
)
         Defendant )
_____ )

2011 MAR 25 ¡P 4: 48

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

Civil Action No.: 1:11 CV 310
LMB/TRJ

## COMPLAINT

Plaintiff Sylvan Learning, Inc. ("Sylvan"), by and through its undersigned counsel, hereby files this Complaint pursuant to the *in rem* provisions of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(2) ("ACPA"), against the domain name registration "sylvanfranchiseissues.com," and in support thereof states as follows:

### Nature of the Action

1.    This is an *in rem* action under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(2) ("ACPA"), for injunctive and other relief relating to the registration of the Defendant, Internet domain name, "sylvanfranchiseissues.com" (the "Domain Name"). The Domain Name contains the registered mark, "Sylvan," which is owned and used by Plaintiff Sylvan.

**Parties**

2.      Plaintiff Sylvan is a corporation organized and existing under the laws of Delaware having its principal place of business at 1001 Fleet Street, Baltimore, MD 21202.

3.      Sylvan owns an incontestable trademark registration for the "Sylvan" mark with the United States Patent and Trademark Office (Registration No. 1410891).

4.      Sylvan is the leading provider of tutoring and supplemental education services to students in Grades K-12 through a network of independent licensees (each, a "Franchisee," and collectively, "Franchisees"). Sylvan's Franchisees develop and tailor individualized learning plans to build the skills, habits, and attitudes of students. Sylvan, through its Franchisee network, offers tutoring instruction for various subjects including math, reading, writing, study skills, homework help, test prep, and more. Sylvan's Franchisees operate more than 800 learning centers in the United States, Canada and abroad and have helped more than 2 million students worldwide.

5.      Sylvan employs a franchisor/franchisee business model, whereby franchisees license the rights to the Sylvan name in their respective territories. Franchisees operate Sylvan learning centers within an assigned territory. Sylvan has been successfully using this business model for 30 years. Sylvan and its 378 Franchisees operate 838 Sylvan Learning Centers in 49 states within the United States. There are 46 franchisees outside the United States.

6.      The Domain Name, also the *res*, is an Internet domain name for which the registry is VeriSign, located in this judicial district.

7.     The Domain Name is registered to Whois Privacy Protection Service, Inc.
("Whois Inc."). Whois Inc.'s *raison d'etre* is to prevent the general public from learning
the true identity of the registrant of a website.

8.     Whois Inc.'s service is offered through eNom, a domain registrar with a
principal place of business in Bellevue, Washington.

9.     The true residence of the Registrant of the Domain Name remains unclear.
However, as explained more fully below, the Registrant of the Domain Name is, on
information and belief, a resident of London, England, or Gujarat, India.

### Jurisdiction And Venue

13.     Sylvan's claims arise under the Lanham Act, 15 U.S.C. § 1125 *et seq.*, as
amended November 29, 1999.   This Court has original subject matter jurisdiction over
this matter pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. § 1121.

14.     This Court has *in rem* jurisdiction over the defendant property
"sylvanfranchiseissues.com" pursuant to 15 U.S.C. § 1125(d)(2)(A) because, under 15
U.S.C. § 1125(d)(2)(C), the domain name registry, VeriSign Inc., is located in this
judicial district and division, and under 15 U.S.C. § 1125(d)(2)(A)(ii)(I), this Court lacks
*in personam* jurisdiction over the registrant of the Domain Name, who would have been
the defendant in an action brought under 15 U.S.C. § 1125(d)(1).

15.     This Court properly has venue pursuant to 28 U.S.C. § 1391.

### Factual Background

16.     Sylvan has been providing educational services for over thirty years.   In
1986, Sylvan registered with the United States Patent and Trademark office the word
mark "Sylvan" (the "Sylvan Mark").

17.    Plaintiff owns numerous U.S. trademark registrations for SYLVAN and marks containing the word SYLVAN. The Sylvan Mark was registered with the United States Patent and Trademark Office for use in connection with a variety of services, including educational services; namely, providing diagnostic testing and prescriptive instruction on an individualized basis to students for reading and math skills. Attached hereto, for example, as Exhibit A, is a copy of incontestable trademark registration 1,410,891 for the mark SYLVAN.

18.    Over the last 15 years, Sylvan has expended over 500 million dollars in advertising its services throughout the United States. This advertising has resulted in the Sylvan Mark attaining wide recognition throughout the United States as an indicator of Plaintiff's services.

19.    Sylvan has been vigilant in protecting the trademark rights associated with all of its marks including the Sylvan Mark. During the time period since registering the Sylvan Mark, Sylvan has sent numerous cease and desist letters and has brought three (3) lawsuits in the past five (5) years to protect its mark from infringing uses.

20.    In addition to Sylvan's corporate office policing the trademark, Franchisees have been indispensible in reporting alleged violations of Sylvan's trademark rights.

21.    On or about June 17, 2010, Sylvan learned from a Franchisee of a website which was defaming Sylvan. The URL for the website is "sylvanfranchiseissues.com" (the "Domain Name").

22.    Franchisees have complained that the Domain Name and the Website (as defined below) are damaging to their operations and the Sylvan brand.

23.    The Domain Name was registered on or about May 2, 2010, long after Plaintiff began using the Sylvan Mark in the United States.

24.    The Domain Name itself is confusingly similar to Plaintiff's Sylvan Mark, as, *inter alia*, the Domain Name includes Sylvan's incontestable registered trademark "Sylvan" in its entirety within the Domain Name, along with the two generic terms "franchise" and "issues."

25.    The Domain Name is also dilutive by tarnishment of the Sylvan Mark as the name explicitly states that there are "issues" with Sylvan's franchises and leads to a website that contains false and misleading statements about the Sylvan franchise.

26.    The webpage that is hosted on the Domain Name (the "Website") purports to be a website which criticizes Plaintiff's franchising practices.  However, many of the purported criticisms contained thereon are literally false statements of fact.  Examples of false statements include, but are not limited to:

> i.    "On June 3, 2010, the Sylvan Franchise owners Association (the 'FOA') published a survey of Sylvan's 1,100 franchises. Question – What is your overall satisfaction of Sylvan Learning Inc. (SLI) as a franchisor?  Answer – 67.7% of Franchisees gave the Franchisor low to very low marks"). Attached hereto as Exhibit B.
>
> ii.   "Almost 65% of the Sylvan Francisees [sic] do not believe the Franchise System is well positioned for the future. (source FOA June 3, 2010 Survey)" , attached hereto as Exhibit C.  "Almost 85% of the Sylvan Francisees [sic] do not believe sylvan Corporate

has supported them during this econmic [sic] downturn. (source

FOA June 3, 2010 Survey)."   , attached hereto as Exhibit D.

iii.  "85% of the Sylvan Franchisees lost money in 2010 (source SFI

Survey.)" Attached hereto as Exhibit E.

iv.  "Over 90% of the current Sylvan Frachise [sic] owners would not

buy another Sylvan Franchise because they feel they cannot make

a decent living running a Sylvan Learning Center. (source SFI

Survey)." Attached hereto as Exhibit F.

v.  "Over 84% of the Sylvan Franchisees have lost faith in Jeff

Cohen's ability to lead the Company and feel he should be

terminated as president.  As President of Sylvan, Jeff is ultimately

responsible for many of the failures that have occurred.  (source

SFI Survey)."Attached hereto as Exhibit G.

vi.  "The Legal Department of Sylvan Corporate enlists the assistance

of a neighboring Franchise to close another Franchises' Center,

encouraging Franchise vs. Franchise." Attached hereto as Exhibit

H.


27.    The Website's claims regarding survey results are false and/or

misleading. Sylvan has determined that not all Franchisees received or participated in

the SFI survey; nor did all Franchisees participate in the FOA survey, so the statements

attributing opinions to percentages of Sylvan Franchisees, as opposed to percentage of

those who *responded*, are false and misleading. Nor is there any indication that the SFI survey was fairly designed or conducted.

28.     After discovering the Website, Sylvan sought to identify and contact the Registrant of the Domain Name regarding Sylvan's intellectual property rights and the defamatory statements in existence on the Website.

29.     When Sylvan conducted a Whois search—a search designed to disclose the registrant of a domain name—for the Domain Name, the search results stated that the registrant of the Domain Name had employed a privacy protection service named Whois Privacy Protection Service, Inc. ("Whois Inc."). Whois Inc.'s *raison d'etre* is to hide the true identity of domain name registrants.

30.     In response to the search results, Sylvan sent a letter dated February 9, 2011 to Whois Inc. demanding the contact information for the registrant of the Domain Name. A copy of that letter is attached hereto as Exhibit I.

31.     Whois Inc. responded via email stating that the website was registered to:

> Jerry Whittaker
> c/o AsgSoft
> 93 Green Street
> Eastbourne, [UK]
> BN21 1RE
>
> Email: jerry@gamblingwiz.com

A copy of the email is attached hereto as Exhibit J.

32.     Subsequently, Sylvan sent a letter dated February 22, 2011 via email and post to Jerry Whittaker concerning the Domain Name's violation of Sylvan's rights. Attached hereto as Exhibit K is a copy of the letter.

33.    On February 25, 2011, Sylvan received an email response to its mailed

letter of February 22, 2011 from Mr. Abdul Gomaa.  The email stated in relevant part the

following:

> I have received a letter from you today with regards to
> sylvanfranchiseissues.com.  The letter was addressed to a
> "Jeremy" which isn't someone that resides in this address.
> However, the reason I looked at it more closely is because
> of "ASGSOFT" which is written on it. This is the name I
> use when I create websites for clients which made me go
> back and think it might've been related to a service I
> offered back early in 2008 when I was paid $5 for use of
> my UK address for registering domains.
>
> I have spoken to the guy whom I was dealing with who is
> called Kenneth (kenneth@everestmarketing.co.uk) and he
> has informed me that it's his domain and I may shred the
> letter I received which I am very glad about.

Attached hereto as Exhibit L is a copy of Mr. Gomaa's February 25, 2011 email.

34.    On February 25, 2011, Sylvan and Mr. Gomaa exchanged two additional

emails.  Sylvan asked Mr. Gomaa to confirm that he currently had no connection with

the Domain Name and Website and asked Mr. Gomaa to provide Kenneth's last name.

Mr. Gomaa responded by confirming that he had nothing to do with the Domain Name

and that he did not know Kenneth's last name.  Mr. Gomaa informed Sylvan that

Kenneth had instructed him to forward all correspondence regarding the Domain Name

to:

> 215 Jalaram Complex
> Vapi-Silvassa Road,
> Vapi - 396191
> Gujarat, IN

Attached hereto as Exhibit M is a copy of the above-referenced email correspondence

from February 25, 2011.

35.    The following day, Sylvan received by email a response to its February 22, 2011 emailed letter from Jerry Whittaker.  The letter stated that "ASG Software is the Registrant of the domain 'sylvanfranchiseissues.com', and is operating the website for ourselves and not for a third party.  One of our divisions is a lender to a Sylvan franchise with whom we have a confidentiality agreement."  The letter showed that ASG Software's global headquarters is in Gujarat, India.  A copy of Mr. Whittaker's February 26, 2011 letter is attached hereto as Exhibit N.

36.    Mr. Whittaker also alleged in his February 26, 2011 letter that Sylvan is in violation of the Website's "Terms of Use" because the Terms of Use "prohibit employees, related parties or independent contractors of Sylvan Learning Inc., or any of its affiliates or related parties from accessing the SFI website."  Mr. Whittaker then made the financial threat that SFI (as defined in Mr. Whittaker's February 25, 2011 letter) had allegedly identified 60 violations of the Terms of Use by Sylvan which damaged ASG Software in excess of $30,000,000.00.  Mr. Whittaker provided no substantiation for ASG Software's alleged damages calculation.

37.    Mr. Whittaker then informed Sylvan that ASG Software intends to continue "aggressively" operating the Website located at sylvanfranchiseissues.com.

38.    Upon information and belief, ASG Software and Jerry Whittaker are one in the same.

39.    Upon information and belief, Mr. Whittaker resides at the following address:

>Dalton House
>60 Windsor Avenue
>London, England SW19 2RR GB

40.     The email address Mr. Whittaker used to correspond with Sylvan was jerry@gamblingwiz.com.  When Sylvan's outside counsel performed a reverse domain lookup—a search designed to detect the domain names registered to an individual— counsel discovered that Mr. Whittaker has a number of domain names, with all except one appearing to have a gambling focus.  Attached hereto as Exhibit O is a listing of the domain names Mr. Whittaker has registered.

41.     The most notable of Mr. Whittaker's domain name registrations is the last, WESTLAKESYLVAN.COM.

42.     When Sylvan's outside counsel ran an updated Whois search on WESTLAKESYLVAN.COM, the search results showed that the domain was registered to Kenneth Barrington who is located at 3618 West Market Street, Suite 100, Fairlawn, OH 44333.  See Exhibit P, WHOIS for WESTLAKESYLVAN.COM

43.     Upon information and belief, this is the same "Kenneth" referenced in Mr. Gomaa's email correspondence with Sylvan.  *See* Exhibit M.

44.     Kenneth Barrington owns other Sylvan domain names including, but not limited to: SYLVANWESTLAKE.COM.  See Exhibit Q, WHOIS for sylvanwestlake.com.

45.     Currently, sylvanwestlake.com directs the user to Sylvan's website.

46.     The domain SYLVANWESTLAKE.COM is the same domain as the email address of a former Franchisee with whom Sylvan is currently involved in litigation.

47.     Pursuant to the franchise agreement, Franchisees are prohibited from tarnishing the Sylvan brand.

48.     Upon information and belief, there is a connection between the former Franchisee and the bad-faith registration and use of the defendant domain name. There is no other plausible explanation.  Sylvan learned of the website and its disparagement of Sylvan shortly after commencing action to terminate the Franchisee.

49.     Upon information and belief, the Registrant of the Domain Name intended to disparage Sylvan before he registered the Domain Name and built the Website.

50.     Upon information and belief, the Registrant of the Domain Name intentionally posted these false and defamatory statements in an effort to discourage potential franchisees from purchasing franchises from Sylvan.

51.     Upon information and belief,  Mr. Whittaker, Mr. Barrington, and ASG Software tried to keep the registration of the Domain Name as well as the contents of the Website a secret.  Examples of this include

> i.   Employing an identity protection service to prevent the public from discovering the true registrant of the Domain Name;

> ii.  Re-directing Internet traffic originating from Sylvan IP addresses to the website for Huntington Learning Centers Inc., a direct competitor of Sylvan.

> iii. Re-directing Internet traffic originating from Sylvan or Venable LLP IP addresses to http://www.hihanin.com/wwww/.  This website is directed at persons of Korean descent living in the United States, listing various entertainment news and rent information in the United States.

52.     Upon information and belief, the Registrant of the Domain Name has used the Domain Name in bad faith with knowledge of Plaintiff's rights and with the bad faith intent to profit from the registration of this Domain Name and the infringement of Plaintiff's "Sylvan" mark.

53.     Upon information and belief, the Registrant of the Domain Name is intentionally trying to divert consumers from Sylvan's website by using the Sylvan Mark as a keyword search term in its Internet search engine commercial advertising campaign. For example, when a user searches for "Sylvan franchises" using Google, Google's search results page returns an advertisement for the offending Website.  Attached hereto as Exhibit R is a copy of the relevant search results page.

54.     Upon information and belief, the Registrant of the Domain Name has been and is currently aware of Plaintiff's rights and continually attempts to capitalize upon Plaintiff's rights.

55.     Upon information and belief, employees, franchisees, customers and potential employees, franchisees, and customers of Sylvan will be confused as to the accuracy of the statements located on sylvanfranchiseissues.com.

56.     Upon information and belief, the Registrant of the Domain Name has no rights in any trademark for "Sylvan" in the United States or elsewhere.

57.     Plaintiff has incurred and will continue to incur substantial injury, including, but not limited to, lost sales and loss of control of the reputation of its brand because its well-known Sylvan Mark is being used on the Internet by an unauthorized user, causing consumer confusion through the use of the Domain Name.

## COUNT I

### Violation of the Anticybersquatting Consumer Protection Act,
### 15 U.S.C. § 1125(d)(2)(A)(ii)

58.    Plaintiff incorporates the allegations in the preceding paragraphs of this Complaint as if fully set forth below.

59.    An *in rem* cause of action is allowed when the registrant is not found within the United States. 15 U.S.C. § 1125(d)(2)(A)(ii). The *in rem* action may be brought where the registry is located. 15 U.S.C. § 1125(d)(2)(A). In this case, the registry of the .com top-level domain is VeriSign Inc., which is located in Herndon, Virginia.

60.    On information and belief, the Registrant of the domain name "sylvanfranchiseissues.com" is not subject to personal jurisdiction in a United States District Court because (1) he or she is unable to be found and (2) the suspected Registrant is a resident of either London or Eastbourne, England, or Gujarat, India.

61.    The Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(2)(A) provides an *in rem* cause of action against an Internet domain name that violates any right of the owner of a mark registered in the United States Patent and Trademark Office or otherwise protected under Section 15 U.S.C. § 1125(a) or (c).

62.    The Registrant of the Domain Name violates both 15 U.S.C. § 1125(d)(1) and 15 U.S.C. § 1125(c) and therefore is in violation of 15 U.S.C. § 1125 (d)(2)(A).

*Sylvanfranchiseissues.com violates 15 U.S.C. § 1125 (d)(1)*

63.    On or about May 2, 2010, the Domain Name was registered in bad faith with the domain registrar eNom.

64. Examples of Defendant's bad faith include, but are not limited to the following:

    i.   Sylvan's incontestable trademark is used in its entirety in the Domain Name;

    ii.   The Registrant of the Domain Name has no history of prior bona fide uses of the Domain Name to offer goods or services;

    iii.   The Registrant of the Domain's use of the Sylvan Mark in the Domain Name is not a fair use. The Registrant of the Domain Name is intentionally posting statements it *knows to be false* on the Webpage located at the Domain Name;

    iv.   The Registrant, by using the Sylvan mark in the Domain Name and as a keyword for Internet search engine advertising, is intentionally trying to divert consumers from Sylvan's online location to a site accessible under the Domain Name that harms the goodwill represented by Sylvan's mark;

    v.   The Registrant of the Domain Name has threatened Sylvan with allegations that the Registrant has suffered damages in the amount of $30,000,000.00 simply as a result of Sylvan employees accessing the website located at the Domain Name, allegedly in violation of the Website's terms of service;

    vi.   The Registrant of the Domain Name took steps calculated to prevent Sylvan or its counsel from viewing the contents of the Website including employing a privacy service to hide the Registrant's true identity and routing internet traffic originating at Sylvan and/or Venable LLP to various websites other than sylvanfranchiseissues.com; and

    vii.   Even after being put on notice of Plaintiff's objection, the Registrant of the Domain continued to maintain the offending Website and indicated that it will do so in an "aggressive manner."

    viii.   The Registrant is commercially linked ( as a "lender" )to a franchisee, who on information and belief is a terminated franchisee with a business motivation to harm the Sylvan Brand.

***The Domain Name violates 15 U.S.C. § 1125 (d)(1) by violating 15 U.S.C. § 1125 (c)***

65.   The Sylvan Mark is registered with the United States Patent and Trademark Office and is incontestable.

66.   The Sylvan Mark is distinctive and was distinctive at the time the Domain Name was registered.

67.   The Sylvan Mark is famous and was famous at the time the Domain Name was registered.  Sylvan and Sylvan Franchisees advertise via television, Internet and other media.  Sylvan and Sylvan Franchisees spent $26 million in advertising last year alone.  Sylvan  and its Franchisees operate Sylvan Learning Centers have locations in 49 of the 50 United States.  Sylvan has also been the subject of multiple unsolicited third party news articles and commentaries.  Sylvan Franchisees have over 800 locations and have helped over 2 million students.

68.   The Sylvan Mark is closely similar to the Domain Name "sylvanfranchiseissues.com" in that both contain include Sylvan's incontestable, famous trademark "Sylvan."

69.   The Domain Name tarnishes the Sylvan Mark because the Domain Name itself explicitly states that there are issues with Sylvan's franchises.  Furthermore, the Website contains literally false statements regarding Sylvan.  Upon information and belief, these false statements were posted intentionally, for commercial purposes, to tarnish the reputation and goodwill of Sylvan.

70.   The Registrant of the Domain Name has no justification for its acquisition or use of the Domain Name.

71.   Upon information and belief, the Registrant of the Domain Name has no legitimate connection to Sylvan.

Case 1:11-cv-00310-LMB -TRJ   Document 1   Filed 03/25/11   Page 16 of 16

72.   Upon information and belief, the unfair acts associated with the Domain Name are not motivated by protected, truthful speech, but are motivated by a bad faith intent to profit from tarnishment and false disparagement of the Sylvan brand.

73.   The attacks orchestrated by the Registrant of the Domain Name are and will continue to tarnish the goodwill associated with the Sylvan Mark.

74.   As such, Plaintiff is entitled to have the Domain Name "sylvanfranchiseissues.com" transferred to it pursuant to 15 U.S.C. § 1125(d)(2)(D)(i).


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sylvan Learning Centers Inc. respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

A.   Order the transfer of the registration for "sylvanfranchiseissues.com" to Plaintiff;

B.   Issue an Order directing eNom, the registrar, to transfer the registration for "sylvanfranchiseissues.com" to Plaintiff;

C.   Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

VENABLE LLP,

Dated: March 25, 2011

Janet F. Satterthwaite (VA Bar No. 26759)
Christopher S. Crook (VA Bar No. 76636)
Elissa B. Reese (VA Bar No. 78969)
575 7th Street, NW
Washington, DC  20004-1601
202-344-4974 (phone)
202-344-8300 (fax)

*Counsel for Plaintiff*
*Sylvan Learning Inc.*